Communications versus Retrobrands USA. Dorothy Easley is here for the appellant, Retrobrands Appellants, and Jonathan Ellis is here for the appellee, Sprint Communications. And Ms. Let's let them get settled over there first. It's all right. I misled you. I said when you're ready. I meant when everybody's ready. Dorothy Easley, on behalf of the appellants, Jeff Kaplan, Retrobrands USA, LLC, and Nextel Mobile Worldwide. We've raised five issues on appeal. For purposes of oral argument today, I'd like to focus on three issues. The first issue being Sprint's lack of standing. The second issue being Sprint's abandonment of its legally insufficient evidence of Lanham Act use of Nextel marks and services. The third issue is Sprint's failure to elect statutory damages before final judgment that Section 117 expressly requires, thereby restricting Sprint to 117A monetary damages and the erroneous reliance on revenue under 117A when Sprint expressly sought and 117A expressly allows disgorgement of profits, which was in the amount of $38,000. Let's start with standing. How is your standing argument any different than your merits argument? Okay. I thought about that, and we can't separate the two. Let me explain why. Under the Lujan decision, standing requires the plaintiff must have suffered, quote, an injury in fact, and close quote, and it defines that as, quote, an invasion of a legally protected interest, which is A, concrete and particularized, and B, actual or imminent, not conjectural or hypothetical, close quote. Lujan goes on to say that while standing is determined by the facts as they existed when suit was brought, meaning you can't retroactively create standing, it also explains that standing can be considered looking at the facts on summary judgment, even at trial, at which time plaintiff's standing must be, quote, supported adequately by the evidence seduced at trial, close quote. U.S. Supreme Court Transunion decision further underscored that. In addition, this Court's natural answers decision also looked at standing from the standpoint of legally enforceable rights, so let's go back. The point is that you have to allege a legally enforceable right. I mean, sometimes you win, sometimes you lose, but if your standing depended on whether you proved at trial that a legally would collapse in every single case. Right. So that's a very good question. Let me unpack that a minute. Let's remember that standing is comprised of two doctrines. We have the Article 3, live case and controversy standing. We have prudential standing, the judge-made doctrine. Both of them combine to limit the kinds of cases that federal courts will review, and the Lanham Act, true in its plain language, does get you to the door to sue for Lanham Act infringement. But natural answers makes clear that you don't get through the Lanham Act door if you don't have a legally enforceable interest. Isn't it clear that the marks are valid? I'm sorry, Your Honor. The marks are valid. The trademarks were still live, but they were abandoned. In other words, at the USPTO, and we have pending motion for due process. They were registered by the Patent Office, and they were valid. And so, I mean, if we apply the reasoning that we've applied before, for example, Royal Palm versus Pink Palm, footnote 6, they have standing, and they have an injury, in fact, if the marks are valid. And if Retrobrand can't use the marks, and a favorable decision for Sprint redresses the harm. So, we'd have to ignore what we said in Royal Palm if we accept your argument. No, Your Honor, because federal registration is prima facie evidence that you own the mark, but it's not dispositive. And going back to, I want to answer both questions that you've asked. The natural answers decision was decided on summary judgment. It looked at the facts, and it stated that when natural answers ceased producing and discontinued urbiquit lozenges in 2002, and GSK began producing commit lozenges in 2003, not only was, quote, natural answers barred from bringing a Lanham Act trademark infringement claim because it does not hold a valid trademark, it also lacks prudential standing to bring a attempt to register the marks. It's because they were already registered. They were registered, but that doesn't address the issue of abandonment. So, there are two things that play here. Do we or do we not have a legally protected interest? That's a standing question, whether it's Article III case in... So, the jury rejected the abandonment defense. Right? I'm sorry? The jury rejected Retrobrand's abandonment defense. Yes, the jury did. The problem is an indulgent spread of every reasonable inference. And so, let's just assume that the court concludes that U.S. Supreme Court TransUnion is wrong or... No, no, no, no, no. TransUnion is not wrong. Even if we think it is, it doesn't matter for us. Correct, but my reading may be wrong. If the court concludes that we can't look at the facts, even though we've gone through trial, we have to ignore all that, and we only look at the allegations of the complaint, I don't think that's correct. I think natural answers looked at the facts. It was decided on summary judgment. And I also think U.S. Supreme Court TransUnion said with each stage of the So, as more facts come forth, the question is, do you still have a legally protected interest? So, let's just move to the second issue on appeal. Actually, I have one more thing on the first issue, which is you focus a lot on prudential standing, but I don't think your brief addresses Lexmark, which really put prudential standing into a lot of question. I think in Lexmark, the court said it's a set of self-imposed limits beyond the constitutional requirements of Article III, and have pointed out that that's in some tension with what we ordinarily consider the virtually unflagging obligation to exercise jurisdiction when we have it. So, there's some serious question, I think, whether prudential standing is even still a doctrine that is in effect. I'll tell you, we don't ordinarily see it anymore. I think a lot of people have quit making those arguments following Lexmark. Well, Your Honor, I did a split in the circuits. There are three circuits, the Second, Sixth, and D.C. circuits that hold that prudential standing is a jurisdictional doctrine. Seven circuits, the Fourth, Fifth, Seventh, Ninth, Tenth, Eleventh, and Federal circuits hold that prudential standing is not jurisdictional, but the court does consider it in its discretion, and it can be raised for the the Wachito-Watchley decision from 2009 from this court. This court, sua sponte, considered the prudential standing doctrine. So, I'm not going to abandon that, but there's no question because the case did go through trial, we cannot ignore the facts of the case. We can't ignore the evidence that Sprint presented to show there was abandonment, and there was abandonment. Which the jury rejected. The jury rejected that. So, we have to decide whether the evidence was legally sufficient evidence of abandonment and continuous use in commerce as the Lanham Act defines it because the Lanham Act. We have to ignore the internet searches that found Nextel products on Sprint's website. We would have to ignore the testimony and exhibits showing the use of their marks at various trade shows. We would have to ignore the references to a point-of-sale presentation at customer meetings that the jury saw, and we would have to ignore that the United States Patent and Trademark Office rejected Caput's attempts to register the marks. No, Your Honor. I'm not asking you to ignore it. I'm asking you to look at the legal sufficiency of the evidence because that's a recap, but that's not exactly the evidence. We look at the evidence in a light most favorable to Sprint. That's correct. We do. On a JNOV, we indulge every inference for purposes of the plaintiff. That's true. I'm not disputing that. However, we can't ignore the law and the evidence that Sprint's own exhibit showed that Sprint had abandoned. That is, in 2005, when Sprint purchased Nextel, Sprint immediately began abandoning 52 of the 55 marks. In 2008, Sprint wrote off the goodwill. That's legally important because the Lanham Act isn't about protecting marks. It's about protecting the goodwill associated with the marks. We'd have to ignore, we need to scrutinize, that in 2012, Sprint dropped Nextel's name from its corporate name, and I'm happy to give the court record sites at any time. All this was presented to the jury and rejected. That's correct, but this evidence is legally important and dispositive. Under the 8th Circuit Highland potato chip decision, when there was a public announcement, in this case Sprint, in 2012, to the public at large, that they are discontinuing Nextel, shutting down, they used the term shut down, and I want to give the court record sites for that. But the jury, to Judge Wilson's point, heard that too, right? It's not an issue for the use. But there are still products on Sprint's website that say Nextel, right? No, that's incorrect. That's what Sprint says, but that's incorrect. But the jury, I think that Sprint said that to the jury, and the jury decided in favor of Sprint. So why can we get into that ourselves? Because, again, I go back to the legal sufficiency of the evidence. Let's look at these products. They're Sprint products. They're not Nextel products. The 2013 Sony phone and box was a Sprint phone. It's Sony. It's not Nextel. Nextel, a small, tiny font on the back of the box says Nextel-inspired. Under American Photographic, that is not Lanham Act use. The 7th Circuit American Photographic decision explained that these small typefaces and American Magazine decisions— I mean, this is wild to me. That, I think, is the comparison, right? That's from the record? Yes, and guess what? Well, I'm sorry. I'm so glad you asked that, because that part was abandoned. That's on the USPTO site. We have a motion to take judicial notice, 11th Circuit D.E. 55 and 57. That was long ago abandoned. That is not a Sprint mark. The USPTO office recognized it was abandoned, yet Sprint relied on that abandoned mark in its first amendment complaint, the operative complaint, to show continuous use in commerce. What do you have to say about the—you're way over your time, but I would like to hear what you have to say about the dilution claim. Your Honor, what I wanted to focus on for purpose of oral argument today was standing, abandonment, and statutory damages. May I address statutory damages, or would you prefer that I just rest on the brief? You can rest on your brief. All right. Do you want another minute to talk about statutory damages? Yes, Your Honor. Okay. Sprint failed to elect. Sprint pled both statutory and monetary damages. That's D.E. 80 at 45. That's in the prayerfully. During the charge conference, Sprint conceded it was, quote, seeking statutory damages and disgorgement of the defendant's profits, close quote, D.E. 325 at 15 through 16 and 21 through 22. In closing argument, Sprint asked the jury for statutory damages and for infringement and cyber squatting and disgorgement for its claims, D.E. 326 at 25. On the verdict form, Sprint asked for both damages, statutory and monetary, D.E. 309 and 2-4. So they did ask for statutory damages, is what you're saying? They asked for both actual and statutory. So what happened was Sprint created a situation where they had to elect. And there's not a lot of case law on election. But when you elect in all the cases that we've located, including Sprint's cases, there was always an affirmative communication. The statute says you have to elect before entry of final judgment. Respectfully, if I were going to rewrite that statute, I'd say elect before it's submitted to the jury. Because most of the case law, they look at the election at the time it's submitted to the jury. But because the 11th Circuit happens to be the only circuit of all the circuit courts of appeal that has a statutory damages jury instruction, that was submitted to the jury to decide. Usually the judges decided, but Sprint did not elect. And Sprint conceded in its response to defendant's motion for J.E. and O.V. that they had not elected before the entry of final judgment. And I want to give the court the record site for that, D.E. 355 at 8.  giving multiple double recoveries in both monetary and statutory damages. Then Sprint asked for that to be corrected, right? I mean, that's court. We filed a motion for J.E. and O.V. And I did a survey of the case law across the country. I can't find a single decision where a defendant files a motion for J.E. and O.V., a post-judgment motion, because the plaintiff failed to elect. And then the judge says, okay, well, I'm going to give the plaintiff a break and do that election now. I cannot find a single decision. 117A, and this court recognized it in Olam and Jordan. And then the Goberlund decision from the Second Circuit. It's very clear. It's either or. And it has to be... Does that mean that in the face of a jury verdict, that Sprint should receive no damages at all, even though the jury awarded both, because they didn't elect one or the other? No. Under 117A, and I'm really glad you asked this question, because I've analyzed the statute more times than I want to admit. It's either or on 117A and 117C. And the patent jury instructions of the Ninth, the Eighth, and the Seventh Circuits, in addition to this circuit, recognize that 117C is the umbrella for the claims that are under 117A. So trademark infringement, dilution, all of these claims that are in 117A. And Sprint explicitly sought disgorgement of defendant's profits, which is authorized under 117A. That's what Sprint is restricted to. And I'm sorry, Your Honor. I'm way over my time. Thank you, Ms. Easley. Thank you. Mr. Ellis. Good morning. May it please the Court, Jonathan Ellis, on behalf of Sprint Communications. I'd like to start by discussing the abandonment issue, because I think it's the principal issue that cuts through both the merits and the standing analysis here. Judge Wilson, you very accurately described, summarized the evidence that we put in on the continuing use of the Nextel marks in commerce. I want to point out first, as we think about the abandonment issue, it's actually the defendant's burden to prove that. And this Court said it's cumulus, it's a stringent and heavy one. After all, abandonment works in involuntary forfeiture of the trademark owner's property rights. The defendant must show both that we ceased using the mark and that we did so without an intent to resume its use. And then on appeal here, it's on appellant's burden to show that the jury's finding of non-abandonment is, was not supported by the evidence. We think the evidence that you recounted, Judge Wilson, is sufficient for the jury's finding. I heard my friend here to talk about four things, countervailing evidence that they offered on abandonment. Even if you were to credit those, I think the jury was entitled to weigh the evidence and find no abandonment. But I don't think any of those, that evidence actually shows abandonment here. The first thing that my friend talked about was the lapse of the registration in many of Sprint's marks in Nextel. The key point here though, is that there was two live registrations in the Nextel wordmark that covers all of the use of Nextel, including the one that Judge Grant, you showed. Even though a design mark had once been registered and it was allowed to lapse. And there was a live mark in the chirp mark. That was sufficient. And it didn't, the lapse of other registrations has no bearing on whether Sprint abandoned those marks. The second thing my friend noted was the 2008 write-off of Goodwill. There, I think she's just conflating two very different concepts of Goodwill. Goodwill in the tax and accounting sense is the difference between the fair market value of an acquired company and the purchase price for that company. That's what was written off in 2008. You can take a look at the SEC filing. It's in the record at DE 318-10. It's pages 98 to 100. There's no discussion there of Goodwill in the trademark sense. Indeed, in 2008, the name of the company was still Sprint Nextel. And the IDIN network, which I wanna talk about next, was still operating for another five more years. The third thing my friend talked about was the shutdown of the IDIN network. Again, that conflates two different concepts. The Nextel mark indicates the gold service, push-to-talk devices and services that Sprint has offered since 2005 and continues to do so. The IDIN network was one iteration, the technology behind that push-to-talk services until 2013 when the service was transitioned to the Sprint CDMA network and then to the Kodiak platform. But throughout that period, the Nextel mark has always been used to refer to that gold standard push-to-talk devices and services. And the last, I think, that my friend talked about was the change in the name of Sprint Nextel from Sprint Nextel to Sprint. We concede that the name of the company, of course, is no longer Nextel and that Sprint is really the primary brand and now T-Mobile, but that doesn't mean that Nextel is not an important mark for the company and continues to be used. What do you think of Prudential standing after Lexmark? So I do think you're right that it's on life support at all. I think Lexmark was, if I recall, a zone of interest case. I don't think zone of interest has any bearing here. The rest of the Prudential standing doctrines, I think Justice Scalia noted, were hard to square with Article 3 and the court's unfledged and filing duty to exercise jurisdiction, ironically, in a case called Sprint. I don't think the court really needs to grapple with that here, Your Honor. I think that's because, and this is why I start with abandonment, really what I hear my friend saying is that we lack standing because we abandon the marks. What the Lujan's case says is that we've got to show standing at the same standard along the case. We don't think that abandonment is itself a jurisdictional issue and so we think it's efficient that we proved here that they infringed the mark, putting aside abandonment, and that they even concede that if we did infringe, we've shown $38,000 of the damages. That's enough, I think, for standing. If you want to go on and ask, well, okay, did our abandonment then deprive us of standing? An odd way to do it, a complaining of the merits in the standing. We did and that should be judged on the same standard as it would be on the merits, whether the jury had sufficient evidence to make a finding of non-abandonment and the jury did. Can you talk about the dilution claim? I'd be happy to, Your Honor. On the dilution, I think the problem that my friend faces is that appellants conceded repeatedly inside court and out that the Nextel mark was famous and iconic. Kaplan conceded on the stand, DE 298 at 28, that the Nextel mark was famous and iconic because Sprint and Nextel had invested millions of dollars to make it famous and iconic. In 2017, he entered into an agreement, DE 14-39, where it described the mark as famous and iconic. DE 14-27 in 2018, a press release described the mark the immensely popular Nextel mark in the present tense and described it as iconic. And DE 314 at 46, a 2022 press release described the mark again as the famous Nextel brand, not the once famous Nextel brand. And these aren't incidental statements, Your Honor. This is the business model of retrobands. The whole endeavor rests on the fact that Nextel still has enduring fame. The tagline, you can see this at 314-27, is abandoned but not forgotten. There's no reason to go into this endeavor. Should we adopt the household name test? No, Your Honor, I don't think you should. I think you should follow the statute. That was the test that was put to the jury in this case, the jury instructions. What's wrong with the household name test? Well, I think because it's not in the statute, Your Honor. The standard from the statute is widely recognized by the general consuming public. And then there's a set of statutory factors that include the sales, the advertising, the recognition, and whether it was registered in the principal register. I think that's the standard that Congress has provided. That's the standard that the jury was provided. I noted all of the concessions. We think that's sufficient by itself for the jury to find fame here. But we also introduced evidence on all of the statutory factors. We think that's the test that should be. But if we were to adopt it, Nextel would not meet the household name test, would it? Well, I think the question would not be whether we do or do not, but whether the jury had sufficient evidence to conclude as much. I think it did. I think if you look back at this sort of advertising, that Nextel is a household name. I do think it's a household name. I think, you know, I'll say this is an interesting case to talk about it, cocktail parties and the like. And a lot of people do remember Nextel as when it was a mark that was gone to the general consuming public. Fame has a way of sort of sticking around. Yeah, maybe people of your age, but maybe not necessarily people of my age. You know, it's hard for me to say. I will say this was a question that was put to the jury. And I think this court should pause before it questions that verdict. This is a question about general consumer recognition in the market. I think the jury was well situated to judge that, make that finding. And I don't think the court is enough here for the court to overturn that jury finding. I'm happy to address whatever other questions the court has. I will say one more about statutory damages. I think my friend said there was very little case law in this. I would just come into the court, Judge Thepar's opinion in Smith v. Thomas. It's pretty crystal clear on the question. Actually, that was a copyright case. And there, what Judge Thepar said in the Sixth Circuit said, was that all that requires for election is to tell the court at some point in form, in orally or writing, that you'd like to seek statutory damages. And you can do so in the alternative with actual damages. And you heard all the evidence this morning that we did that repeatedly. So you did not elect statutory damages until after the final judgment was entered? I don't think that's right, Your Honor. I think actually we elected it and we asked for it. Now, we can't, of course, receive duplicative awards. And we acknowledge that in the post-verdict motions. Of course, that too was before the final judgment. So even if you think we have to say before final judgment is entered what we wanted to receive, either statutory or actual, we did that and we only were awarded statutory damages. So where do we go in the record to determine that you elected statutory damages before the final judgment was entered? So again, my friend read the citations. I think we did so in the complaint. In the complaint? To the jury. And we did so in the jury instructions because I don't think election requires you to choose one over the other. You can pursue them in the alternative. That's what the Smith v. Thomas court explained. The complaint uses the word statutory damages? Yes, sir. If you were asking me, wouldn't we say we would like to take the statutory rather than the actual? We did that in our post-trial response to their motion for J&OB. If there are no further questions, I'd ask the court to affirm. Thank you, counsel. That's easily your reserve some time for rebuttal. There was no election before final judgment. Words aren't in the complaint? It's statutory and monetary. It went all the way through the jury verdict on statutory and monetary. And I provided the court with the record sites. Right, but he's saying that he elected the statutory damages and post-trial responses to your J&OB. It was post-final judgment. I cannot find a single decision in the Smith v. Thomas decision. They did communicate to the judge pre-final judgment that they were electing. And that's in a careful reading of that decision. They did not elect. The statute says what it says. As the court appreciates, we don't rewrite statutes through judicial fiat because we think, well, post-verdict after final judgment is entered. Spring didn't say a word until after final judgment was entered. When we filed our motion, they sought no affirmative relief. So what did the jury instructions say with regard to statutory damages? The jury instructions followed the pattern jury instruction from the 11th Circuit on the statutory damages. The jury instructions gave the jury the option of monetary damages and statutory damages. The 11th Circuit is the only circuit that has a pattern jury instruction on statutory damages respectfully. I think it's confusing. What I see in the decisions around the country is that usually they elect by seeking only statutory damages in the complaint or in the event of a default judgment, they elect by seeking the statutory damages in the motion subsequent to that default judgment. They will also elect by communicating a motion for summary judgment. They can also elect by even writing a letter to the judge, but it all has to be before entry of final judgment. And usually the way the district courts are deciding the statutory damages is the jury decides the monetary damages. And usually the parties want the judge to be awarding statutory damages. This circuit wrote a pattern jury instruction on statutory damages because correctly, this circuit recognized the U.S. Supreme Court said a jury is entitled, the parties are entitled to have the jury decide all their damages. But the statutory damages are confusing as shown by the verdict that the jury completed. Sprint asked for a whopping $400,000 in monetary damages based on Sprint's revenue in violation of 117A and the jury awarded $2 million under statutory thinking it was statutory damages. So the jury was obviously confused by that as well. In terms of the dilution, Thane is directly on point and Thane recognizes and we had the record site no brief and we stand by him. Even Sprint's own sales associates don't recognize Nextel. All of Sprint's cases on dilution are famous. Chanel, Audi, none throughout the world. Bentley. Our decisions are accurate because Nextel is not a known name. It's not being used today. It's a little tiny font on the back of a sticker on the back of a box and it has been abandoned. So we respectfully request that the court dismiss for lack of jurisdiction. That the court reverse the denial of the JNLB in the alternative that the court remand with instructions to enter the 117A appropriate damages on the 38 vouchers or in the alternative for a new trial on damages. And I thank your honors for your time. Thank you, counsel. Court is in recess until nine o'clock tomorrow morning.